WM. L. FISHER *vs.* LOUISA FISHER. LOUISA FISHER *vs.* WM. L. FISHER.

*Divorce—When Both Parties Guilty of Adultery no Divorce Granted to Either—Condonation of Adultery Upon Implied Condition of Proper Conduct—Revival of Offense—Jurisdiction of Equity in Divorce Cases.*

Upon a bill and a cross-bill for divorce, each party charging the other with adultery, and the charges being sustained by the evidence as to both, no relief will be granted to either.

When a wife condones the offense of adultery by her husband, it is upon the implied condition that he will thereafter treat her with conjugal kindness. Subsequent cruelty of treatment by him is a breach of the condition which revives the cause for divorce arising from the condoned offense, and a husband guilty of such cruelty after condonation is precluded from obtaining a divorce on the ground of his wife's adultery.

Although jurisdiction in divorce cases has been given to Courts of equity by statute in this State, yet the Court in such case sits, not in the exercise of its general equitable jurisdiction, but as a divorce Court, and must be governed by the principles established in the Ecclesiastical Courts in England, prior to the Revolution, so far as they are consistent with the provisions of our statutory law.

Cross-appeals from a decree of the Circuit Court of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Morris A. Soper* and *George M. Lane* for Wm. L. Fisher.

*O. C. Warfield* for Louisa Fisher.

BOYD, J., delivered the opinion of the Court.

The original bill in this case was filed by the husband against the wife charging her with adultery and praying for a divore *a vinculo matrimonii.* The defendant answered, denying the charge, and the same day filed a cross-bill in which she charged her husband with adultery and prayed for a divorce, alimony, etc. Both bills having been dismissed, cross-appeals were taken to this Court. The record is unnecessarily large, but is subject to criticism for the *quality* rather than the *quantity* of the evidence. This Court has seldom been called upon to review a case which presented more immorality than the one now before it. But few of the one hundred and seventy pages in the printed record are free from references to bawds, bawdry or bawdy houses, and most of those that are abound in allegations and charges of cruelty and conduct unbecoming to husband and wife. We do not propose, therefore, in this opinion to review at length the evidence offered on either side, but will, for the most part, content ourselves in stating our conclusions as to the facts and the law applicable thereto.

These parties were married in 1890. They lived together until late in 1895, or early in 1896, when they separated and remained apart until the fall of 1898, when they became reconciled. They occupied the same house from then until about the time this bill was filed, in March, 1900. Although much of the evidence was given by persons whose characters, as shown by their own admissions were such as to require us to accept their statements with great caution, it was met by testimony no more worthy of belief and is sufficiently corrobo-

rated to cause us to reach the conclusion that the defendant was guilty of adultery after the reconciliation in 1898. That precludes her from obtaining a divorce under the cross-bill, even if it be conceded that she has sustained the charge of adultery against her husband, which we will hereafter consider.

Our statute is silent as to the defense of recrimination, but a Court of equity will not afford relief to one who has been guilty of the same offense, uncondoned, against the marriage contract. It was a bar in the Ecclesiastical Courts. It was said in *Beeby* v. *Beeby*, 1 Haggard's Ecclesiastical Reports, 790. " It is not unfit if he, who is the guardian of the purity of his own house, has converted it into a brothel, that he should not be allowed to complain of the pollution which he himself has introduced ; if he, who has first violated his marriage vow, should be barred of his remedy, the parties may live together and find sources of mutual forgiveness in the humiliation of mutual guilt. " The maxim that " He who comes into equity must come with clean hands" requires of one seeking a divorce, upon the ground of adultery, to come with a chaste character and not be tainted with the same crime of which he or she complains. As was said in *Mattox* v. *Mattox*, 2 Ohio, 234, where both were guilty, " to grant relief to either of them would be offering a bounty to guilt." In 9 *Ency. of Law* (2 ed.), page 816, a number of cases are cited, but the principle is sustained in *Hawkins* v. *Hawkins*, 65 Md. 104, where it was held that a wife would not be granted a divorce *a mensa et thoro,* upon the ground of alleged cruelty of treatment, and excessively vicious conduct on the part of the husband, if it appear that she was likewise guilty of cruel treatment towards him.

The remaining question to be determined is whether the husband is entitled to a divorce, under the bill filed by him. The evidence shows that he was, prior to the reconciliation in 1898, guilty of adultery, but it does not clearly establish the fact that he was after that time. It also shows that the wife knew prior to the reconciliation that he had been thus guilty and therefore she condoned the offense, as there was a re-

newal of cohabitation. A number of definitions of condona-
tion can be found in the authorities and in some States the
statutes define it. In 2 *Greenleaf on Evidence*, section 53, it is
said "Condonation is forgiveness, with an implied condition,
that the injury shall not be repeated, and that the party shall
be treated with conjugal kindness ; and on breach of this con-
dition, the right to a remedy for former injuries revives."
In 9 *Ency. of Law*, (2 ed.) 825, many authorities are collected
as to the effect, on condonation, of a repetition of the offense
or a new cause for divorce, and in the text it is said: "Condo-
nation being forgiveness on condition of future good conduct,
a repetition of the offense or the commission of another cause
for divorce will revive the condoned offense, and the latter may
be set up as a cause for divorce. The misconduct which will
revive a condoned cause for divorce need not be a repetition
of the condoned offense. *Misconduct constituting a cause for
separation only is sufficient to revive a condoned offense which is
a cause for an absolute divorce.*" For the latter statement the
case of *Johnson* v. *Johnson*, 14 Wendell, 637, is cited. That
case has a peculiar history so far as this point is concerned.
The Vice-Chancellor in 1 Edw. Chy. 439, announced the law
as above stated. From his decree there was an appeal to the
Chancellor, who in 4 Paige, 460, reversed the Vice-Chancellor.
It was then taken to the Court for Correction of Errors and the
decree of the Chancellor was reversed by a vote of eleven to
nine, 14 Wend. 637. In a note of the Reporter it is stated
that Senator Kemble, who had voted with the majority, said
that he did so for the reason that he was not satisfied that a
condonation had been established by the evidence, and he had
not examined the question whether, under the revised statutes
of New York, a right of action for a divorce for the cause of
adultery can be revived after condonation by any subsequent
misconduct of the husband other than of the character of the
original offense. The opinion of the majority was delivered
by CHIEF JUSTICE SAVAGE, and we think it was founded on
sound principles. He cited amongst others, the cases of *Du-
rant* v. *Durant*, 1 Haggard's Ecc. Rep. 733; *Worrley* v. *Worr-*

*ley*, Ib. 734, and *D'Anguilar* v. *D'Anguilar*, Ib. 764. It was said the doctrine of condonation is not so readily presumed against the wife as against the husband. The Ecclesiastical Courts deemed it meritorious on her part to forgive her husband with the hope of reclaiming him. Sometimes the wife is so situated that she feels compelled for the sake of her children, as well as for her own support, to live with her husband, even after she had found he was untrue. She may forgive him the wrong done her, but as was there said "The good sense of the implied condition which accompanies condonation is that the offending husband shall not only abstain from adultery, but shall in future treat his wife with conjugal kindness. Hence cruelty is a breach of the condition and revives adultery." In a note to that case in *Lockwood's Reversed Cases in Law and Equity*, 141, the author says, "We believe that the profession generally considers the question very well *settled* by the opinion of CHIEF JUDGE SAVAGE." In 2 *Greenleaf on Evidence*, section 53, it is said "*Condonation* is a sufficient answer to the charge of adultery in a libel ; but it does not follow that it is a good answer to a recriminatory *plea* ; for circumstances may take off the effect of condonation, which would not support an original suit for the same cause. Thus, facts of cruelty will revive a charge of adultery, though they would not support an original suit for it." In 2 *Bishop on Marriage, Divorce and Separation*, section 308, that learned author says : "All condonation, especially the implied, is upon the condition both that the offense shall not be repeated, and likewise that continually afterward the party forgiven shall treat the other with conjugal kindness ; whereupon a breach of the condition revives the original right of divorce." After discussing the English cases in the subsequent sections, the author in giving the American authorities refers to *Johnson* v. *Johnson*, and concludes section 317 with the statement that "other judicial opinion in this country is believed to be nearly or quite unanimous in accord with this New York doctrine, though not in all the cases are the facts broad enough to cover the entire ground." See also *Langdon* v. *Langdon*,

25 Ver. 678; *Davis* v. *Davis*, 19 Ill. 334; *Sullivan* v. *Sullivan*, 34 Ind. 368, and cases in *Haggard's Ecclesiastical Reports*, *supra*.

In this State, although jurisdiction in divorce cases has been conferred on Courts of equity, "the Court in such case sits, not in the exercise of its general and ordinary equitable jurisdiction, but as a divorce Court ; and must be governed by the rules and principles established in the Ecclesiastical Courts in England, wherein a similar jurisdiction has been exercised, so far as they are consistent with the provisions of the Code." *J. G.* v. *H. G.*, 33 Md. 406. Or as was said in *Childs* v. *Childs*, 49 Md. 514 : " In England this branch of matrimonial causes was subject to the jurisdiction of Ecclesiastical Courts, which were governed by the principles of the canon and civil law, which to that extent became a part of the common law, and as such is recognized and adopted by the declaration of rights and Constitution of this State as a part of the law of the land." We might, therefore, have been content to cite as authority on this question the decisions of the Ecclesiastical Courts, some of which we have mentioned and which sustain the doctrine announced in *Johnson* v. *Johnson*, but when the Courts in this country have not been controlled by statute they, for the most part, have adopted the view announced by the Chief Justice in that case, which we deem to be the correct one. They generally hold also that acts which of themselves may not be sufficient to justify granting a divorce may suffice to be a waiver of the condonation and to revive the original offense. That principle is eminently in accord with justice and the public good. For while it is true it is the policy of the law to encourage condonation, for it should aim to reunite rather than separate man and wife, and condonation hinders divorces and the waiver of it generally aids them, yet if the defense be recrimination, then as the waiver revives the original offense, the result of the rule just announced not only tends to prevent the dissolution of the marriage contract or separation under authority of law, but it warns married people that they cannot with safety violate their vows and then expect the aid of a

Court to release them from their obligation, unless, after they are forgiven, they conduct themselves as man and wife ought to do towards each other. There are cases in which the parties are justified under the law to obtain divorces, and under some circumstances it may be best that they be legally separated, but we cannot be unmindful of the fact that the easy dissolution of the marriage contract has a tendency to depreciate the solemnity of such vows as are taken and the necessity of living up to them. When, therefore, one proves untrue in this relation and is forgiven by the injured one on the condition, which the law implies, that in the future the forgiveness will be rewarded by conjugal kindness, Courts of equity should require of him a fair and reasonable performance of that implied condition before he can blot out his original wrong doing and ask for relief.

We will not quote the testimony on that subject, but in our opinion it establishes such cruelty on the part of the husband as, under the authorities, is at least sufficient to revive the original offense of adultery, which was condoned, and we need not discuss it as to its sufficiency to authorize a divorce *a mensa et thoro.* If the wife had not been guilty of adultery, or other offense, and was seeking relief, she would be entitled to it, but as both of them stand before us guilty of adultery (the offense of the husband having been revived by his cruelty), neither is entitled to a divorce. The decree of the Court below, which dismissed both bills, will, therefore, be affirmed.

> *Decree affirmed, the parties to pay their own costs in this Court, the costs below to be paid by William L. Fisher, as directed by the decree of the lower Court.*

(Decided April 10th, 1901.)