## CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed March 6, 1916.

GEORGIA T. MURRAY
VS.
CLINTON L. MURRAY.

*Louis A. Turin* for plaintiff.
*George W. Cameron* for defendant.

BOND, J.—

In this case there has been a study and discussion of the use of the writ of *ne exeat regno* in a divorce court; and as some reference may be made to it in other cases hereafter, I think it well to make a record of the conclusions arrived at, and announced orally.

In a final decree a child of the parties was given into the custody of the mother, and the father was required to support it. A subsequent order fixed the amount he should pay the mother for this purpose. But he did not pay, and, being held in contempt of court, he served ten days in jail rather than assign to the child a legacy about to be received by him, although he himself had suggested the possibility of his doing so to secure release from imprisonment. And after he was released there seemed to be no assurance of his paying, but rather a likelihood that he would avoid payment at all costs. There was not, however, any threat made by him that he would leave the state; and nothing to support the application for the writ of *ne exeat* but a belief that he was quite capable of resorting to this means of escaping payment. If the question had come up in a criminal trial, upon a charge of desertion and non-support, there would have been ground for requiring a bond for support as a condition to the suspension of sentence, according to the usual practice in that jurisdiction.

While courts of equity in this state have jurisdiction over applications for divorce, we are reminded that they sit, in the exercise of that jurisdiction, not in the performance of the ordinary functions of equity courts, but as *divorce courts;* distinct offices, the latter of which is one of those of the English Ecclesiastical Court, transferred and devolved upon our courts of equity. And in this latter function they must, says the Court of Apepals, "be governed by the rules and principles established in the Ecclesiastical Courts in England, wherein a similar jurisdiction has been exercised, so far as they are consistent with the provisions of the Code."

J. G. vs. H. G., 33 Md. 406.

Fisher vs. Fisher, 93 Md. 298.

The Ecclesiastical Court had no power to compel a husband to give bail, upon any pretext, and it became customary for the Court of Chancery, in an original proceeding there, to issue the equitable writ of *ne exeat regno* when needed to secure the payment of alimony and support past due. Possibly the Court of Chancery would issue its writ in such a cause with less hesitation than it felt in issuing it to secure the payment of an ordinary debt. That distinction would at least be comprehensible, although no case has been cited in which it was actually drawn. But the Court seems never to have issued the writ to supply the place of a bond to secure payment generally, such as we now require in the Criminal Court. On the contrary, it was issued only for the purpose expressed in its name. It was issued only when the husband was going out of the kingdom. "And," says Shelford (Marriage and Divorce, 600), "if the husband makes it appear that he does not intend to leave the kingdom, the Court of Chancery will not grant the writ, although he may not intend to pay the alimony which is due from him."

Power to exact security for the payment of alimony and allowances for support would, I should say, be a valuable aid to a court of equity—just as valuable as the equivalent power lodged in the criminal courts. No orders of court are so persistently and so contemptuously flouted as those which have to do with these payments. But however desirable it may be that the Court should have this power, it has not inherited it from the Ecclesiastical Court or from the Court of Chancery. And I do not at present see that it can derive such power from any other source. For the purposes of this application it is sufficient to observe that the writ of *ne exeat regno* cannot be used except to meet a threat of some sort to leave the state. No such threat was alleged, and the application for the writ was accordingly dismissed. It is fair to say that the defendant produced evidence tending to show that he had no intention of leaving.