### EFFIE M. McFREDERICK *v.* CHARLES H. McFREDERICK.

[No. 49, October Term, 1930.]

*Decided January 13th, 1931.*

92

The cause was submitted on briefs to Bond, C. J., Patti-son, Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*Robert F. Leach, Jr.,* for the appellant.

*John G. Schilpp, Charles C. G. Evans,* and *Brune, Parker, Carey & Gans,* for the appellee.

Parke, J., delivered the opinion of the Court.

Charles H. McFrederick and Effie M. McFrederick were married on April 14th, 1915, and lived together, without having any children, until they separated in August, 1924, because of their marital differences. They entered into an agreement under seal on August 25th, 1924, which adjusted their respective property rights and bound the husband to pay the wife the weekly sum of $12.50 for her maintenance and support so long as they should live apart. The agreement concluded with the declaration that it should not prejudice the rights of either party, if grounds should exist for a divorce.

The husband and wife continued to live apart, and on April 2nd, 1929, the husband began proceedings to obtain an absolute divorce on the ground of adultery, and a release from any further obligation under the agreement. The wife answered with a denial of the material allegations and filed a cross-bill charging cruelty, abandonment, and adultery, and praying for temporary and permanent alimony, counsel fees, and general relief. The reply of the husband to the cross-bill was a complete denial of any wrongful conduct, and an averment that they had separated by agreement. After the parties were at issue, testimony was taken before

the chancellor, who dismissed the complaint of the wife and granted the husband a divorce *a vinculo matrimonii,* and released the husband from all further obligations under the contract. The appeal is by the wife from the decree.

There is no question of abandonment in this case, as the couple separated by common consent. 1 *Bishop on Marriage and Divorce* (2nd Ed.), sec. 1282. Nor is there any collusion in connection with the pending questions, as both deny what the other charges, and contest every point. The testimony is conflicting, and before either spouse may have relief he or she must establish by the clear proponderance of the testimony the infidelity of the other. In meeting this burden of proof, the carnal act must be duly shown by clear, positive, and satisfactory evidence, with due regard, however, to the peculiarity of the offense, since adultery is usually an act done under cover of darkness and secrecy and in which the parties are seldom surprised. These circumstances are pointed out in *Bishop on Marriage and Divorce,* and attention is called to the facts that the evidence of time and place is often indistinct and that the proof is generally circumstantial. Volume 2, secs. 1350-1351, 1354. With these principles of proof in mind, the record has been read and pondered, and a conclusion formed.

The court is in agreement with the chancellor that the wife was guilty of adultery. Her paramour testified to their intimacy and their frequent criminal intercourse. She admitted a long-continued association but denied all wrongful conduct, and the testimony disclosed that their present relations are unfriendly because of her action to recover money which she had loaned the corespondent. After giving due consideration to these circumstances and the fact that the principal witness is a paramour, the opportunities are shown to have been so numerous, and the testimony of the man is so specific and unartificial, and so corroborated by disinterested witnesses in many of its material particulars, and not contradicted in others which were susceptible of refutation if untrue, that the wife's infidelity is clearly established.

The husband admitted he knew the married woman with whom he was said to have had criminal intercourse, and the woman was franker in disclosing a friendly association; but they both denied their relations ever were illicit. Mrs. McFrederick observed her husband's familiarity with the woman and their seeking each other's company and evident enjoyment of each other's exclusive society. This conduct was noticed by the woman's husband, who testified it was of frequent occurrence, and that his wife would leave her home at night and be gone for an hour or more, and because of his suspicions he followed her and discovered she went to the home of McFrederick, who was there. Other witnesses testified to McFrederick's lascivious fondling of women and of the co-respondent, so that an adulterous inclination of both was established. These acts and the disposition of the principals are not of themselves sufficient to establish adultery, but they are of weight in considering the credibility of a witness who testifies to the commission of the carnal act. In the case at bar, the testimony is that the accused pair were members of the same church, and the man sang in the choir and was active in entertainments of the church, which furnished them occasions to meet, as the woman lived in the same block in which the church stood. A member of the choir testified that, while searching for a place to hold an assignation, he accidentally discovered McFrederick and the woman in the case committing adultery one night in an abandoned choir loft of the church, while a rehearsal for an entertainment was being held in the basement of the church. This eye-witness stated that an arc light opposite a church window supplied enough light to enable him to recognize the pair, and that he later saw them come out of the loft.

The witness is a nephew of Mrs. McFrederick, but he did not reveal his knowledge to her on his own initiative. He told the husband of the woman on the occasion of a casual conversation what had happened some years after it had occurred, and this husband, who left his wife but did not institute a suit for divorce because of lack of means, told Mrs. McFrederick, who sought the witness and then obtained the

information a few months before the pending proceedings were begun. The nephew had played for the church choir and this required him to be present at the rehearsals, and his testimony was apparently not animated by any prejudice, enmity, or ill will, and it is by no means inherently incredible. In fact, it is in character with the proven inclination of the accused and the independent evidence which indicated, without of itself establishing, a criminal attachment between the parties.

Both McFrederick and the alleged *particeps criminis* were married at the time the offense was committed, and both were then the subjects of suspicion of infidelity by their respective spouses; and both had shown a partiality for each other's sole company and, according to several witnesses, had been surprised in lustful familiarities. Their regular meetings at the choir rehearsals and the unused choir loft afforded an opportunity and a place, with a minimum risk of scandal or detection, not to be obtained at the home of either or elsewhere. With the will of each to commit the act concurring with the opportunity, the testimony of the eye-witness to their guilt cannot be rejected as incredible or untrue, in view of the other incriminatory circumstances. *Miller v. Miller,* 140 Md. 60, 63, 66, 116 A. 840.

So, both husband and wife, the complaining parties in the original and cross-bills, were guilty of adultery, and neither shall have relief. 2 *Bishop on Marriage and Divorce* (2nd Ed.), sec. 360. For this reason the decree of the chancellor should have dismissed both bills and have left the articles of separation of the parties intact. *Fisher v. Fisher,* 93 Md. 298, 300, 48 A. 833; *Newbold v. Newbold,* 133 Md. 170, 174-175, 104 A. 366; *Spear v. Spear,* 158 Md. 672, 149 A. 468.

> *Decree reversed in part and affirmed in part, and bill dismissed, with costs to be paid by the appellee.*