## GROVER C. SENSABAUGH *v.* MARY V. ·SENSABAUGH

[No. 116, October Term, 1945.]

*Decided April 12, 1946.*

The cause was submitted to MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Edward J. Ryan* appeared on the brief for the appellant.

*Clarence Shutter* appeared on the brief for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Grover C. Sensabaugh, appellant, from a decree of the Circuit Court for Allegany County granting a divorce *a mensa et thoro* and $70 per month as permanent alimony to the appellee, Mary V. Sensabaugh, as the result of a bill of complaint filed by her.

The parties were married on June 8, 1939. The appellant was a widower, fifty-four years of age, with seven of his children living at home and others married and living elsewhere. The appellee was then about fifty-two years of age with no children. No children have been born as a result of the marriage of the parties to this case. They had known each other all of their lives and were married after a short courtship. The appellee spent one week in appellant's home previous to the marriage when the seven children were living there and was familiar with the household. Until July, 1944, they had no serious trouble, although there were disputes between the parties about various acts of the children. At that time the appellee and one of the children had an argu-

ment about whether a clean sheet should be put on a couch. The appellant, hearing the argument, came into the house, grabbed the appellee and said, "Why in the God damn don't you get out and stay out?" and threatened to throw the appellee out of the house. She also said that she threatened to call the police and he said, "If you call the police, I will kill you." She said that he grabbed her, shook her by the shoulders and arms and left black and blue marks. These marks were seen by a neighbor. The husband admits that he caught hold of her arms and told her to get out, but he did not think he bruised her. As a result of the husband's orders she left the house and instituted a suit for divorce in July, 1944. Through the efforts of a minister the parties were later reconciled and the suit for divorce dismissed and they continued to live together.

Apparently nothing seriously happened until appellant began drinking again. The wife testified that he went away and stayed all day on Sunday and that he has crawled in bed with his clothes and shoes on and oftentimes someone brought him home. On May 5, 1945, a Sunday, he left home and did not return for lunch. His wife called him at his club about 4 o'clock. When he returned home she reprimanded him for not being home on Sunday and she testified that he said, "That's my God damn business," and then hit her and left marks on her face. At that time he had been drinking. These marks were seen by a neighbor. She called a police officer. He testified that when he arrived the appellant was sitting in the kitchen eating and the appellee showed him some red marks on her face, which she said had been put there by the appellant. They were both very much upset and as he did not want any further trouble he arrested the appellant and took him to the police station. The policeman said he was not drunk. The appellee testified that her husband told her at that time that she had better not be there when he came back. This statement is corroborated by the police officer. The appellee has continued to live in the house but not as the wife of the

appellant. The appellant admits that he smacked the appellee on the side of her face but not very hard. On cross-examination the appellant admitted that he had smacked his wife a number of times. He claims that she continually nagged him about the conduct of his children when he returned from work in the evenings.

Appellant testified that he makes $72.30 a week, clear of income tax. The wife says that he makes $888 a month. The appellee has no means of her own. The appellee testified on cross-examination that, while she did not think her life was in danger, she could live no longer with the appellant because her health had been ruined by him and she could not stand it. Her blood pressure was high and she was very nervous and she had been to see a doctor. The chancellors, who heard the case, stated in their opinion that the appellee is a rather delicate and refined lady while the appellant is a strong, robust, healthy man.

As Judge Markell said in the recent case of *Collins v. Collins*, 184 Md. 655, 42 A. 2d 680, at page 683: "Doubtless both taxed each other's patience. He was not a Job, nor she a Griselda. * * * If the wife was mentally or nervously sick, such treatment would be still more inexcusable. * * * 'Of course, by returning to his home and living with him after the dismissal of the first divorce proceeding, she condoned his cruelty of treatment prior to that time. However, subsequent cruelty by the defendant revived the former offenses. *Fisher v. Fisher*, 93 Md. 298, 48 A. 833'."

It has been frequently pointed out by this court that a single act of violence will not justify a divorce on the grounds of cruelty nor do sallies of passion, harshness, rudeness, and use of profane and abusive language. Only danger to life, limb, or health will constitute such cruelty. *Short v. Short,* 151 Md. 444, 135 A. 176; *Wendel v. Wendel,* 154 Md. 11, 139 A. 573; *Faulkner v. Faulkner,* 176 Md. 692, 4 A. 2d 117; *Collins v. Collins, supra.*

We have testimony before us, which is not contradicted, that, although the wife did not think her life was in

danger, yet her health has been seriously impaired by the conduct of her husband. His conduct shows that he had little regard for the health of his wife. His acts of smacking her on more than one occasion and ordering her to leave his home, which she once did, fully confirm this. *Mason v. Mason,* 181 Md. 666, 30 A. 2d 748; *Stevens v. Stevens,* 183 Md. 599, 39 A. 2d 690, 691. It was not necessary for the husband to use physical violence to protect himself. The chancellors, who heard the case and had the opportunity during the trial to observe the appearance and demeanor of the witnesses, stated in their opinion, "The plaintiff is a rather delicate and apparently refined lady, while the defendant is a strong, robust, healthy man engaged in the contracting business." The finding of fact by the chancellors, in a divorce case, should not be disturbed here unless clearly contrary to the weight of the evidence. *McClees v. McClees,* 160 Md. 115, 152 A. 901. We believe there is sufficient evidence in this case to affirm the finding of the chancellors.

To deny a divorce *a mensa et thoro* would not do justice in this case. Neither the husband nor his children want the appellee in the home. He has repeatedly told her so. She must have a place in which to live. To live elsewhere she must have money for her support. The wife being without means of her own, an award of $70 per month, as permanent alimony, does not seem to be excessive considering the earnings of the husband.

*Decree affirmed, with costs.*