SMITH *v.* SMITH

[No. 62, October Term, 1948.]

*Decided January 14, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, and HENDERSON, JJ. and NILES, J., specially assigned.

*Albert R. Bowen, Jr.*, with whom was *J. Britain Winter* on the brief, for the appellant.

*Webster C. Tall*, with whom was *George W. Della, III*, on the brief, for the appellee.

NILES, Judge of the Supreme Bench of Baltimore City, by special assignment, delivered the opinion of the Court.

In the present case, the wife, appellee here, was granted a divorce *a mensa et thoro* against her husband, and was awarded the sum of $10 per week as alimony. The proceedings were commenced by the filing of the wife's bill of complaint which charged the husband with cruelty. The husband answered, denying the alleged cruelty, and filed a cross-bill, likewise praying for a divorce *a mensa et thoro* on the ground of desertion. The Chancellor, Chief Judge Smith, granted the relief prayed by the wife, and dismissed the husband's cross-bill; no opinion was filed. The husband has appealed on the grounds that cruelty by the husband was not proved; and that the wife herself was guilty of desertion.

114

The record shows that the parties have been married for twenty-nine years, and have four children, all but one of whom are of age. Two of the adult children, a daughter and a son, are living in the home of the parents, a house which is owned as tenants by the entireties. The husband and the wife are living in the same house, although in separate rooms.

Two questions are here presented:

1. Did the conduct of the husband amount to such cruelty as would justify a divorce *a mensa*?

2. If the wife has failed to prove cruelty but has proved abandonment, although she did not in her pleadings allege such abandonment, should this Court nevertheless affirm the decree in view of the fact that the husband in his cross-bill charged the wife with abandonment, and lost his case on that issue?

Although the wife testified that her husband had been guilty of acts of violence against her "off and on" during their whole married life, there is no testimony that there was serious trouble between them until 1944 when the wife complained to the magistrate at a police station of her husband's conduct; no formal proceedings were taken at that time.

The testimony for the wife relating to cruelty resolves itself into four incidents, all of which occurred between February and June 1947.

The first was an altercation in February 1947 over certain money which the wife was slow in sending to a son who was in the Army. The husband found the money in his wife's pocketbook; she tried to take the pocketbook from him, and in the scuffle which ensued he broke her glasses and she tore off his shirt. The wife had the husband arrested, but at a police station hearing the husband was dismissed.

The second incident was on May 15, 1947, when the wife left the husband's bedroom, began to sleep in the living room, and thereafter refused marital relations with him. The last marital intercourse had occurred two days previous to her leaving his bed. She testified that her

reason for leaving her husband was his attitude, and that he was "dragging on her daughter."

The third incident took place on June 9, 1947. The wife was talking on the telephone, as she testified, to an unidentified man about the delivery of a washing machine. She said into the telephone that she could not talk because her husband was present. The husband thereupon became enraged, broke up a dining room chair, and threw the pieces under the table.

The fourth occurrence took place on the same evening, during another argument, when the husband took a picture from his daughter's bureau, made a motion with it, and then struck the wife on the head with his hand, so that she lost her balance and fell to the floor.

Although there is much other testimony in regard to contention and ill treatment, these are the only incidents of physical violence which could be considered in connection with the charge of cruelty as that term has been defined by this Court.

In *Collins v. Collins*, 184 Md. 655, at page 662, 42 A. 2d 680, 683, Judge Markell said:

"It is settled law that a single act of violence will ordinarily not justify a divorce on the ground of cruelty; also that marital neglect, indifference, failure to provide as freely as the wife may desire in dress or conveniences, sallies of passion, harshness, rudeness, and use of profane and abusive language do not constitute cruelty as grounds for divorce and that only danger to life, limb, or health will constitute such cruelty."

See also *Sensabaugh v. Sensabaugh*, 186 Md. 348, at page 351, 46 A. 2d 635.

The four incidents complained of do not seem to us to have been sufficiently serious to come within the rule stated above. We do not believe, therefore, that the conduct of the husband in this case was so violent, or constituted such a threat to life, limb or health of the wife, as to amount to "cruelty" in the legal sense.

However, even though the conduct of the husband did not amount to legal "cruelty," we do not think that

116

he is to be excused, or that the wife was necessarily at fault in leaving his bed. As Judge Markell said in the *Collins case, supra,* 184 Md. at page 663, 42 A. 2d at page 683:

"Cruelty is not the only equivalent of constructive desertion. Constructive desertion may consist of conduct other than cruelty, which makes life unbearable."

The record in the present case contains a dismal story of disputes, hard words, quarrels over money and children, proceedings in the police courts, inability of the wife to sleep, temporary separation, and strain on the wife's health due to her husband's conduct.

In *Kruse v. Kruse,* 179 Md. 657, at page 663, 22 A. 2d 475, 478, Chief Judge Bond said:

"It is settled that conduct of one spouse which compels the other to leave may justify a divorce to that other on the ground of desertion, even though the conduct may not justify a divorce on the ground of cruelty. *Harding v. Harding, supra* [22 Md. 337]; *Singewald v. Singewald,* 165 Md. 136, 137, 166 A. 441. It must, however, render impossible the continuation of matrimonial cohabitation with safety, health, and self-respect. *Schwartz v. Schwartz,* 158 Md. 80, 90, 148 A. 259. And putting aside for the moment the question of this wife's responsibility, this Court, concurring with the chancellor, concludes that her actions did render it practically impossible for the husband to continue living with her longer than he did. As described in the record it was such as would break the patience of any husband. His work and livelihood would have been jeopardized if he had continued, and peaceful living seems to have been impossible."

In *Fischer v. Fischer,* 182 Md. 281, 34 A. 2d 455, Chief Judge Marbury discussed the cases in which such interference by members of the household, although not amounting to legal cruelty, had justified the wife's leaving and thereby constituted constructive desertion by the husband.

In *Singewald v. Singewald,* 165 Md. 136, 166 A. 441, the wife sued for a divorce *a mensa et thoro* on the ground

that her husband's conduct had been so cruel, brutal and vicious that she had been forced to leave him. This Court denied the divorce, holding both parties at fault, but Judge Offutt said, 165 Md. at page 147, 166 A. at page 446:

"We have intentionally refrained from deciding that the act of the wife in leaving the husband's home was an act of desertion, since that question is not directly presented by the appeal, and there may be cases in which while the conduct of the erring party would not constitute legal cruelty, it might nevertheless excuse the act of the injured party in leaving the common home."

The present case is unlike the *Singewald case, supra,* since in this case the specific issue of abandonment was litigated in the Court below. Here, the husband by his cross-bill charged the wife with desertion in June 1947, and it was admitted that she had refused at about that time to share her husband's bed. The evidence adduced by both parties was both relevant and admissible either on the issue of cruelty or on the issue of abandonment. It was necessary, for a decision on the issue presented by the cross-bill, for the Chancellor to determine whether or not the wife's leaving the husband, and refusing to perform various marital duties, was or was not justified. This the Chancellor did by determining that the wife's action was justified. The only basis to support such a determination was that the husband's charges against the wife were unfounded and that the wife's grievances were substantial, not trivial, and amounted to a constructive desertion. We review this finding, therefore, upon the basis that the Chancellor accepted the wife's version of the facts as set forth in the testimony.

Judge Markell in the *Collins case, supra,* 184 Md. at page 663, 42 A. 2d at page 684, said that:

"The atmosphere of the trial—the appearance and demeanor of the witnesses and their manner of testifying— is invaluable in reaching a correct and just conclusion. The lower court had this atmosphere, * * *. If the

record left us in doubt we should not disturb the findings of fact."

We believe that there was ample evidence upon which the Chancellor based his view that the husband's conduct justified the wife in leaving him, and therefore that his conduct amounted to constructive desertion.

The only remaining question is whether this Court, believing that the husband was guilty of constructive desertion, has now the power to affirm the decree of the Chancellor, when her bill of complaint charged cruelty, but her proof made out only a case of abandonment which, however, would entitle her to the relief which she prayed. Whatever the answer may be, it is clear that this Court has power to remand the case so that the wife may amend her bill to allege abandonment and proceed to decree in the court below. The question therefore concerns mere procedural and not substantive rights.

The husband points out that under the bill filed against him he was not warned to defend himself against a charge of desertion. He was however warned to defend himself against the charge of cruelty, and the facts which in our opinion result in a constructive desertion are the same facts which were proved under the charge of cruelty and were considered in connection with the husband's own countercharge of desertion. The testimony which the Chancellor evidently believed clearly showed that the wife was justified in leaving her husband, although we do not think that the legal effect of it was to prove statutory "cruelty". To send the case back so that the wife could amend her bill and ask for the same decree on the ground of abandonment, which would then be granted by the Chancellor on the evidence already produced before him, would merely result in more litigation and more expense to the parties. See *Wald v. Wald,* 161 Md. 493, 500, 159 A. 97.

Under these circumstances we will not take this action, but will affirm the decree.

*Decree affirmed, with costs.*