## ZIMMERMAN *v.* ZIMMERMAN

[No. 78, October Term, 1951.]

*Decided January 11, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Foster H. Fanseen,* with whom were *Ginsberg & Ginsberg* on the brief, for the appellant.

*Melvin J. Sykes,* with whom was *Ben Weintraub* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by William E. Zimmerman from a decree awarding his wife, Katherine E. Zimmerman, appellee, a divorce *a mensa et thoro* and alimony of

$15.00 a week.   They were married October 23, 1950.

Both of the parties had been married twice previously. With the parties in this home, in which the appellant had a substantial interest, lived appellee's fifteen year old son, the appellant's father over 80 years of age, and a cousin of the appellant who was suffering from an infected leg.   This cousin, according to the testimony of the appellee "had an open leg, which the stench from that is terrible, you can not stand it, and everything in general—conditions were such that I just could not live there, and I asked my husband if we could not make another home, and he said he would not leave there under any conditions because the end was too close with his father. * * * Well, his cousin at times would lose control of his bowels, and I was expected to clean that up, plus his open leg.   The bath room was full of secretions when he changed the bandages.   The cousin refused to go to the doctor for any medical attention.   If you mentioned a doctor to him he would collapse, and yet he worked every day of his life. * * * It impaired my health, the continual argument and bickering, day in and day out.   I could not hold my meals when I sat at the table with his cousin at night.   The stench from it was so bad you could not stand it. * * * I weighed 126 pounds when I married him, and when I came home I weighed about 110 to 112, due to I could not eat."   She said she left him on February 7, 1951, after she told her husband that she could not stand the conditions, and she was going to leave.   She testified that he said "Go ahead".   He would not make another home for her.

When she asked for another home she testified that "he said he would not, and after we were separated I seen him and asked about getting a separate place, and he told me positively no, he would not make a home for me, to get out and go to work."   She said: "The second day I left I went back to get some clothes, and his father had changed the lock, so I could not get in the house, and he peeped over the top of the door and laughed at me.   I told him I was going down to get

the radio car to get my clothes, which I did not do. I called my husband at work, and asked him why I could not get in, and he said his father was acting on his orders, that I could not get in unless he himself was home, and he worked during the day I would either have to come at night or Sunday when he was home." Testimony was taken in open court on June 21, 1951. The appellee said she did not go to work until the end of March, 1951, and her regular employment lasted only until the 21st of July. At that time her salary was $32.00 a week.

The appellant claims that his wife knew the cousin's condition when she went to live in the house. The wife said she did not know about the stench until after she went there to live. The husband admitted that there was a stench coming from his cousin's leg and he found the odor rather unpleasant. The appellee's mother testified that the odor was sickening and that the appellant said it made him sick and he would see what he could do about it. The appellant said his overall salary was $60.00 a week, but his "take home" pay was about $48.00. He pays no rent for the house.

During the hearing of the case the trial judge said: "I am giving Mr. Zimmerman his opportunity now to tell me whether he wants to pay what would be a fair weekly amount from his salary, taking into consideration she is working now and capable of working, or whether he loves his wife enough to realize the situation and provide a home for her. I am not criticizing him either way—whatever he wants to do." In answer to this inquiry the solicitor for the appellant replied: "I have talked to Mr. Zimmerman, and in answer to your Honor's question about finding a place, and he says he has thought it over and he thinks he better wind this up. His wife left him twice. He does not think she has any love in her heart for him. He says, no, in answer to the question." This was not a mere refusal of reconciliation from the witness stand as in the case of *Thomas v. Thomas,*

197 Md. 15, 22, 78 A. 2d 225, 228, but was made after consultation with his solicitor.

After this answer by the appellant the chancellor granted the divorce *a mensa et thoro*, counsel fee of $100.00, and ordered the appellant to pay $15.00 per week as alimony.

It is settled law in this State that the conduct of one spouse which compels the other to leave may justify a divorce even though the conduct may not justify a divorce on the grounds of cruelty. *Kruse v. Kruse,* 179 Md. 657, 663, 22 A. 2d 475. Constructive desertion may consist of conduct other than cruelty, which makes life unbearable. *Schwartz v. Schwartz,* 158 Md. 80, 90, 148 A. 259. In this case it is evident that the wife could not continue to live in the home provided by her husband without loss of her health and self-respect. Such a condition justified her in leaving him and constitutes constructive desertion. *Schwartz v. Schwartz, supra. Gold v. Gold,* 191 Md. 533, 539, 62 A. 2d 540. *Smith v. Smith,* 192 Md. 111, 116, 63 A. 2d 628.

The wife clearly indicated that she would return to the husband if he provided her with a decent home in which to live. During the trial the chancellor asked the appellant whether he would provide such a home for her. After consideration, and after talking with his solicitor, the chancellor was informed that he would not provide another home. This is a case in which the atmosphere of the trial, the appearance and demeanor of the witnesses and their manner of testifying is invaluable in reaching a correct conclusion. The chancellor had that opportunity. His finding should not be disturbed unless clearly erroneous. *McClees v. McClees,* 160 Md. 115, 119, 152 A. 901. *Collins v. Collins,* 184 Md. 655, 663, 42 A. 2d 680. The divorce *a mensa et thoro* will be affirmed. *Fischer v. Fischer,* 182 Md. 281, 34 A. 2d 455.

The appellant further complains that the award of alimony of $15.00 per week is incorrect. Code, Article 16, Section 17, provides: "In all cases where alimony or

alimony *pendente lite* and counsel fees are claimed, the court shall not award such alimony or counsel fees unless it shall appear from the evidence that the wife's income is insufficient to care for her needs." Of course, in determining this award of alimony and whether the income of the wife is sufficient to care for her needs, consideration should be given to the husband's wealth and earning capacity, the assets and income of the wife, the station in life of the parties, their age, physical condition, ability to work, the length of time the parties have lived together, the circumstances leading up to the divorce and the fault which destroyed the home. In making such an award, the court cannot set any fixed standard or formula, or any specific rule. It can only use judicial discretion to the necessary end of awarding justice based upon reason and law. *Waters v. Waters,* 191 Md. 436, 440, 441, 62 A. 2d 250; *Saltzgaver v. Saltzgaver,* 182 Md. 624, 635, 35 A. 2d 810; *Faulkner v. Faulkner,* 198 Md. 495, 498, 84 A. 2d 884. The decree will be affirmed.

*Decree affirmed, with costs.*