## AGNES J. STIMIS *v.* ALVAH R. STIMIS

[No. 135, October Term, 1945.]

*Decided May 17, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*Albert J. Goodman* and *James A. McAllister* for the appellant.

*Linwood L. Clark* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Agnes Stimis, hereinafter known as the appellant, from an order of the Circuit Court for Anne Arundel County dismissing her petition for the custody of her minor child, Robert Lee Stimis.

The appellant and the appellee, Alvah R. Stimis, were married in the year 1934 in Dorchester County, Maryland. Two children were born to this marriage, one having died. The other, Robert Lee Stimis, was seven years old at the time of this appeal. The appellant is thirty-three years of age and the appellee is forty-eight years old.

The appellant, having moved to Anne Arundel County, on April 21, 1944, filed a bill of complaint in that court for a divorce *a vinculo matrimonii* from the appellee on

the grounds of desertion. An answer and cross-bill was later filed by the appellee. In the cross-bill he alleged desertion and adultery on the part of the appellant. The appellant filed an answer denying the charges but offered no testimony at the hearing on the cross-bill. As a result of the hearing, at which no evidence of adultery was offered, the appellee here, on the 11th day of July, 1944, was granted a divorce *a vinculo matrimonii* from the appellant on the cross-bill. The custody of the infant child, Robert Lee Stimis, was awarded to the appellant, subject to the further order of the court with the right to the appellee to see the child at all reasonable times. The appellee was ordered to pay the appellant $8.00 per month for the support of the infant child.

On September 25, 1944, the appellee filed a petition alleging that the appellant had gone to the State of Maine with one Joseph Cyr, her paramour, had taken the infant child with her, and the best interest of the child required that the cusody be awarded to the appellee. After order *nisi* on this petition and no answer, on the 31st day of October, 1944, the custody of the infant child was awarded to the appellee, subject to further order of the court, by Judge Melvin. On September 19, 1945, a petition was filed by the appellant for the recission of that order. After answer was filed to this petition by the appellee and testimony taken, on the 5th day of November, 1945, the chancellor, Judge Clark, dismissed the petition of the appellant and reaffirmed the award of custody of the infant to the appellee, subject to the right of the appellant to see the infant at reasonable times. From that order the appellant appeals.

It is a well-known principle of law in this state that in cases involving the custody of a child, the sole question before the court is the best interest of the child. *Young v. Weaver,* 185 Md. 328, 44 A. 2d 748; *Piotrowski v. State, etc.,* 179 Md. 77, 18 A. 2d 199; *Dietrich v. Anderson,* 185 Md. 103, 43 A. 2d 186; *Cockerham v. Children's Aid, etc.,* 185 Md. 97, 43 A. 2d 197. The question before this court is therefore whether for the best interest of

.the minor child, Robert Lee Stimis, custody should be awarded the mother, the appellant, or the father, the appellee.

The parties to this cause were married in Dorchester County, Maryland, in 1934, and apparently lived there happily together for a time. Then Joseph Cyr, whom the appellant had met at a garage, came to board at the home of the parties to this suit. At that time the appellee was working at the Eastern Shore State Hospital making $40 per month and his board.

The appellant left her husband in January, 1940, claiming that he did not provide enough money for her support. Then she and her mother. operated a dance hall and beer tavern near Cambridge, Maryland, where Joseph Cyr was employed as a "bouncer." The parties to this suit became reconciled in April, 1941, and lived together until August, 1941. Appellant then left the second time in August, 1941, and stayed away until Christmas Day of that year when she returned to her husband and lived with him for three days. Then on December 28, 1941, she told him to get out of the house as he was not giving her enough money. This resulted in the final separation of the parties.

Joseph Cyr moved early in 1942 to Anne Arundel County, near Severna Park, and obtained employment as a mechanic. He rented a furnished house and in March, 1942, the appellant moved with her son to this house and was installed as Cyr's housekeeper. Both the appellant and Cyr testified that Cyr paid her $5.00 a week and boarded her and the boy as compensation for being his housekeeper. There were two bedrooms in this house and the only people living there were the appellant and her son and Cyr. The appellee testified that he came from Dorchester County to Severna Park to see his son a number of times but that he only found him home once. As hereinbefore stated, on April 21, 1944, the appellant filed a bill for divorce a *vinculo matrimonii* which resulted in the appellee obtaining the divorce. In September, 1944, the appellee visited the home in Severna Park

where his wife formerly lived and found that all the belongings had been removed from the house and that no one was living there. He made inquiry at the post office for a forwarding address but was unable to get this.

He then filed on September 25, 1944, the petition hereinbefore referred to, in which he stated that his former wife had left for Maine with Mr. Cyr and had taken the child with her, but that he had been unable to ascertain her address and prayed that the decree of July 11, 1944, be modified. A copy of this petition was served on appellant's counsel and was sent by him to the appellant, but she took no action thereon. Finally, during the latter part of August or early in September, 1945, Mr. Stimis was informed as to his former wife's address in Maine. He then immediately went to Fort Fairfield, Maine, with a certified copy of the order of October 31, 1944, which awarded him custody of the child. A *habeas corpus* proceeding was filed in Maine but no action was taken thereon pending the return of the parties to Maryland. Upon the return to this state testimony was taken which showed that, when the sheriff in Maine went to the home where Joseph Cyr, Agnes Stimis, Robert Lee Stimis, and Cyr's daughter-in-law lived, he was told by the appellant that she was Mrs. Cyr. She later admitted that she was Agnes Stimis. The child, Robert Lee Stimis, was entered in school by his mother under the name of Robert Cyr. At the time of the *habeas corpus* hearing in Maine, Cyr, who at that time had a wife and several children, had a divorce suit pending. After the appellant returned to Maryland for the custody hearing, he obtained his divorce and came down to Maryland and married the appellant before the hearing in the custody case. It was testified at the custody hearing that Cyr and his wife intended to return to Maine and take the child with them.

At the time of the hearing the appellee lived and worked on a farm in Talbot County, Maryland, owned by his sister and which was also occupied by the brother of the appellee and his father and mother. The appellant admits that as far as she knows it is a decent, respectable

home. There is testimony that, although this farm has been purchased by the sister of the appellee, a plan is under way which, if consummated, will result in the sister, the brother, and the appellee each owning a one-third interest in the farm. This farm in Talbot County is convenient to churches and schools.

Although there was no direct evidence that Cyr and the appellant lived as man and wife during the time they occupied the house in Anne Arundel County, the living conditions there were certainly not above suspicion, and were such as to lead a reasonable person to believe that the relations of these parties were more intimate than they admitted. The appellant admitted that during the last few years before the custody hearing she was in love with Cyr and he was in love with her. Their denials of intimate relations are not convincing. Her actions in leaving the State of Maryland and going to Maine with this man, not her husband, taking the child with her, using Cyr's name as her own in Maine, living in the same house with him, and entering the boy in school as Cyr's son, could hardly be said to be to the best interest of the child. The question naturally arises as to why Cyr took the appellant to Maine when he had his daughter-in-law living with him who could have been his housekeeper. During the time appellant lived in Maryland her husband paid her $8.00 per month toward the support of the infant. In order to conceal her residence in Maine she forfeited that $8.00 a month in not advising her husband of her address there. Also she did not contest the custody proceedings brought by the husband in Maryland by his petition filed on July 11, 1944. It is reasonable therefore to conclule that she did not want her whereabouts in Maine known.

Cyr can neither read nor write which may in part excuse his actions, but in view of all the circumstances of this case this fact does not add to his qualifications as the head of the household in which the mother seeks to rear the child. It is true that these lovers have finally married, but this in no sense removes the stigma placed

on the infant child in Maine, where he lived with his mother, who used the name of a man to whom she was not married, and in whose home she lived, and where he was placed in school as the son of his mother's alleged paramour. There is no attack on the character of the appellee. From the information before us he is a law-abiding, moral, and industrious man. It is not disputed that the father has a good home for his son in Talbot County, Maryland. From the record it is very doubtful that the home in Maine is such as to develop the best in the child. The chancellor had the parties before him for his personal appraisement and had the opportunity to judge the credibility of the witnesses. We see no reason to disturb his order from which the appeal is taken.

*Order affirmed, with costs to the appellee.*