## IDA LOUISE PEKAR *v.* PAUL S. PEKAR

[No. 119, October Term, 1946.]

*Decided April 18, 1947.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Harold Buchman,* with whom was *David J. Markoff* on the brief, for the appellant.

*Charles D. Harris,* with whom was *France, Rouzer & Lentz* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

The appellee secured a decree for a divorce *a vinculo* from the appellant in Circuit Court No. 2 of Baltimore City. The custody of the minor son of the parties was awarded to the appellee in the same decree, and the cross-bill of the appellant was dismissed. From this decree the wife appeals.

The appellant's appendix consists of one page which contains the decree. None of the testimony, which we should have an opportunity to review, is printed. Our rules provide that appellants shall print whatever they wish us to read. We have said that if this is not done, we will pass upon the case upon the printed record. The present rules in this respect were adopted in order to save litigants money, not to save counsel labor, nor to impose greater labor upon the Court. In the case before us we will consider the case upon the statement of fact contained in appellant's brief, which puts these facts in the best possible light for her. The pertinent parts of this statement are as follows:

"Ida Louise Pekar, the Appellant in the case, was married to Paul S. Pekar, the Appellee, in 1936, and they lived together until the early part of 1944, when

the husband, Paul S. Pekar, entered military service. * * *

"A son, Gerald Pekar, was born to the parties, and at the time of the hearing was eight years of age. * * *

"In the summer of 1944, the Appellant, Mrs. Pekar, went to an attorney, Oswald C. Robinson, for legal advice in connection with payments due on the loan on the property occupied by herself and her child, after her husband's departure in the Navy. Apparently, and it is admitted, the Appellant developed a friendship with Mr. Robinson. It is conceded and apparent that the love of the Appellant for her husband abated and that she acquired a liking for Mr. Robinson, which was reciprocated. The testimony revealed that Mr. Robinson, with others, paid a visit to Mrs. Pekar's home, that she accompanied him in his automobile with her son on one or more occasions, that he wrote to her letters demonstrating his affection, that she finally, after having left the joint home of the parties to this appeal several weeks prior because, as she contended, of the strained relation between her husband and herself, went with her son to a home maintained by Mr. Robinson in Anne Arundel County. Her testimony, and that of Mr. Robinson's, was that she purchased a one-half interest in the property with money saved by her and given to her by her father, with the understanding that when she obtained the balance of the purchase price of Two Thousand Dollars ($2,000.00), the other one-half interest was to be conveyed to her. From August, 1945, until the time of hearing, Mrs. Pekar and her son occupied the home in Anne Arundel County, at High Point. She testified, and was corroborated by Mr. Robinson, and other witnesses, that she used the second floor bedroom, while Mr. Robinson and her son used the bedroom on the first floor of the bungalow. Both she and Mr. Robinson emphatically denied any intimacy, of any character, any sexual relations, and admitted no more than that they entertained a high degree of affection for each other that might or might not be consummated by their

marriage in the event of severance of the marital ties of Mr. and Mrs. Pekar. It is also true that Mr. Robinson, according to the testimony, spent much time and slept in the same house, using the first floor bedroom.

"There is no testimony pertaining to any improper conduct of Mrs. Pekar, other than the occupancy of the same house as Mr. Robinson, riding in a car with him with her son, and certain observations by a detective and Mr. Pekar, all of which reveal only that the two parties occupied the same house. * * *

"There was additional testimony to the effect that there were separate mail boxes in the name of Robinson and Pekar at the High Point home, that a neighbor did mistake Mrs. Pekar and called her Mrs. Robinson, that occasionally children made that error but were corrected by Mrs. Pekar.

It is also true that no effort at concealment of the occupancy of the home by Mr. Robinson and Mrs. Pekar was made. On the contrary, the parents and relatives of both Mr. Robinson and Mrs. Pekar freely visited the Anne Arundel County home and were visited by Mr. Robinson and Mrs. Pekar."

The appellant contends that where direct evidence is not obtainable, proof of adultery must consist in proof of both inclination and opportunity. She relies strongly upon the case of *Steinla v. Steinla,* 178 Md. 367, 13 A. 2d 534. In that case the husband was accused of adultery with two women. The Court found that, as to one woman, the parties had both disposition and opportunity and, therefore, the fact was proved. As to the other woman, the Court said the facts did not exclude a reasonable possibility of innocence. In that case, however, the parties were not living together. In the case before us they lived in the same house, alone, with the exception of the minor son, a boy about eight or nine years old. The appellant contends that this fact of itself, while it shows opportunity, does not indicate an improper inclination, and that the fact that the parties expect to marry when both are free, indicates that they have a high respect

for each other, and that their relations are innocent. It may be so, but, to an ordinary mind, it is not probable. If it is so, then either the parties concerned are very naive in their ideas of public opinion, or they are entirely regardless of it. They have only themselves to blame if the Court finds them guilty.

In the old English case of *Chambers v. Chambers*, 4 Eng. Ecc. 448, quoted in the opinion of this Court in *Shufeldt v. Shufeldt*, 86 Md. 519, 39 A. 416, 420, the Court said: "Courts of Justice must not be duped. They will judge of facts, as other men of discernment, exercising a sound and sober judgment on circumstances that are duly proved before them. That a young woman, estranged from her husband, and a young officer should be living together for months, and at different places, though under the flimsy disguise of separate beds, and that Courts of Justice should not put upon such intimacy the construction which everybody else would put upon it, would be monstrous." This Court, in the same case, quoted with approval *Dunham v. Dunham*, 162 Ill., 589, 44 N. E. 841, 35 L. R. A. 70, "appellee and the co-respondent may be innocent of this serious charge, * * * but Courts must decide questions of fact from the evidence, and parties are only themselves to blame, when by their own conduct, they furnish the evidence of their own condemnation." · In the case of *Fassett v. Fassett*, 143 Md. 35, 121 A. 859, 864, where the parties were living in the same house and each expressed an affection for the other, this Court said, "But, while it is possible that Fassett and Mrs. Husband are guiltless of the offence with which they are charged, no reasonable man of ordinary intelligence and experience could draw that conclusion from the facts in this case. And since these facts are but a chronicle of their acts and conduct, they cannot complain if the Court draws from them the only inference of which they are susceptible, and, if they are injured thereby, they can only blame themselves for having acted in such a manner as to make such an inference necessary." To a similar effect, are statements to

be found in two recent cases in this Court, *Dougherty v. Dougherty*, 187 Md. 21, 48 A. 2d. 451, and *Stimis v. Stimis*, 186 Md. 489, 47 A. 2d 497.

We can come to no other conclusion than that the appellant has been guilty of adultery, and, therefore, that the appellee was entitled to a divorce *a vinculo* from her.

It is earnestly contended that the custody of her child should not be taken from appellant. It is said that the child, living in the country with her, is better off than he would be living in the city with his father and grandmother, who is willing to take care of him. It is probably true generally that children are better off in the country than in the city, but there are many healthy children raised in cities. If the boy in this case is adversely affected by living in the city, the Chancellor can always, upon proper representation, make such changes in the decree as appear to him to be desirable. But certainly, upon the facts shown, this boy should not be permitted to live with his mother while she is living as she is now. There would be no possibility of his being inculcated with any principles of morals or decency under such circumstances. We think the Chancellor was correct in giving his custody to his father.

*Decree affirmed with costs.*