## CULLOTTA *v.* CULLOTTA

[No 177, October Term, 1948]

*Decided June 9, 1949*

378

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Isidor Roman* and *Alexander Stark* for appellant.

*Edwin J. Wolf,* with whom was *Harry B. Wolf, Jr.,* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Frank J. Cullotta, appellant, from a decree dated January 10, 1949, dismissing his bill of complaint in which he asked for the custody of his four infant children; and granting a divorce to his wife, Marie G. Cullotta, cross-complainant and appellee here, and awarding to the appellee the custody of the children, namely: Marion, born June 26, 1939; Vincent, born January 21, 1941; Marie, born April 22, 1943; and Betty, born January 3, 1945, and ordering the appellant to pay to the appellee the sum of $30.00 per week for the support of the children and as permanent alimony, and awarding a counsel fee of $60.00 to the solicitor for the appellee. The cross bill of the appellee was based on the grounds of cruelty of the appellant.

The parties to this case were married on November 7, 1938, and since that time their married life has been rather turbulent. From the date of their marriage until 1944 the parties lived at various times at his father's home, his uncle's home, and in apartments. Finally in 1944 they moved into a house on Dorchester Road in Baltimore which they bought, and on which his father and mother made the down payment. The house was made into two apartments, the family living on the lower

floor and the upper floor being rented. All during the married life the wife has complained because her husband did not provide her with sufficient money to properly provide for the family. In October, 1946, the wife had the husband arrested for assault upon her. He was given a suspended sentence of twenty-five days and required to pay the costs. After that occurrence the wife filed a bill for a divorce *a mensa et thoro*.. However, the parties were reconciled and the bill dismissed.

The appellant claims that his wife was continually arguing about money and left him on various occasions. Through the efforts of the priests of the church to which they belonged, each time they were reconciled. The appellant also claims there were offered in evidence notes showing that the wife at various times sent the children to their paternal grandmother for meals and care. These notes do not appear in the printed record. Edward M. Speaker, appellant's brother-in-law, who has no children of his own; Thomas Amspakcher; Jessie Roberts, who worked for the paternal grandmother; Sadie Zito, the appellant's aunt, testified that in their opinion the appellee did not properly care for her children.

The evidence in the case shows that starting in October, 1947, the appellant, who made approximately $60.00 per week and owned an automobile, bought for a Miss Erman Garringer, who worked with him at the Western Maryland Dairy, jewelry, a tray, an ice bucket, a lamp, a bag, a suitcase, and a diamond ring, the ring being purchased on May 21, 1948, and later returned to the store. Miss Garringer also had furniture stored with Jarboe Brothers in Balitmore in the name of the appellant. He claims that he had not seen her for three or four months before the separation of the parties. The wife claims that on account of his association with Miss Garringer he stayed out late at night. This caused violent arguments between the parties. The appellee testified that on one occasion she talked to Miss Garringer and told her: "I was married and living with him, and we had our four children, and I told her that he mistreated

us, and she told me she would not live with him if she were me, and I told her that the reason she wanted me to leave him was so that she could have him, and I told her I would not leave him."

Mrs. Dorothy Burgan, who lived directly opposite the parties to this suit testified that about August 23, 1948: "All of the neighbors were out waiting for the jingle man, and Mrs. Cullotta ran around from the back of the house. I remember it specifically because I had never seen a man strike a woman before, and she said, 'No, Frank, don't make me,' and he smacked her on both of her cheeks, and I think then they ran into the house. All of the neighbors saw it."

The appellant testified that he came home from work on September 11, 1948, and asked his wife to give him the rent, which had been paid her by the occupants of the upstairs apartment, and he says his wife replied: "Yes, I got that money, and I am going to keep it and spend it on myself and the children." He says the appellee then ran out of the house leaving two of the children in the bathtub. He did not run after her. He says she did not return to the house until one Sunday, about December 1, 1948, under an arrangement to see the children. He said he wanted this rent to pay on the money loaned him to convert the upstairs apartment.

Appellee testified that on September 11, 1948, she had collected the rent that morning and when appellant came home he asked her if she had collected it and she replied in the affirmative. He then asked her for it and she did not answer him. She was going up the basement stairs to the kitchen and he said: "And it better all be there too." She replied: "Suppose it is not." At that time she was near the stairs leading to the yard and she knew he had beaten her two weeks before. When she replied to him he started down the stairs and ran toward her and she says: "And when I said that he turned down the stairs and started to run towards me. I did not give him a chance to get near. I ran up the back stairs and ran outside." As he came down toward the

front pavement she went down the street and hid between two houses. When she thought he had left she returned to the house and the door was locked. She then went down the street and a neighbor, Mrs. Alva D. Smith, asked her if she would like to come in. She said that she called her father and brother who came and took her to her father's house. Four days later the appellant filed a bill of complaint for custody of the four minor children of the parties. The children remained with the father until the decree of the lower court.

A number of the neighbors testified that the appellee treated her children well and kept them clean and neat looking and were kept just as well as any of the other children in the neighborhood. Mrs. Dorothy Durgan, the neighbor, said: "I have often thought—I don't see how Mrs. Cullotta kept the children as well as she did, because she always had clothes on the line, and always was washing and whenever I would see her she was working at home, and she was with the children all the time. I was not watching too often." The paternal grandmother, with whom the children had spent much time, when asked the question whether she thought the appellee was a fit mother for the children, replied: "Well, I could not say to that because I am not down the place to know whether she is a fit mother or not." She also admitted that her own children, when small, were cared for at times by their grandmother. The appellee testified that she sent the children to the paternal grandmother's home only when she went to see a doctor, or when she went shopping, never for pleasure.

Marital neglect, indifference, failure to provide as freely as the wife may desire in dress or conveniences, sallies of passion, harshness, rudeness and use of profane and abusive language do not constitute cruelty justifying a divorce. Only danger to life, limb, or health will constitute such cruelty. *Short v. Short*, 151 Md. 444, 135 A. 176; *Porter v. Porter,* 168 Md. 296, 303, 177 A. 464; *Bradshaw v. Bradshaw,* 189 Md. 322, 324-325, 55

A. 2d 719, 720; *Eberwein v. Eberwein,* 193 Md. 95, 65 A. 2d 792. Constructive desertion may consist of such conduct which makes life unbearable. *Fischer v. Fischer,* 182 Md. 281, 292, 34 A. 2d 455; *Collins v. Collins,* 184 Md. 655, 663, 42 A. 2d 680. To justify one spouse in leaving the other, the misconduct of the other spouse must be such as to render it impossible for the party who leaves the other to continue the matrimonial cohabitation with health, safety and self-respect. *Hastings v. Hastings,* 147 Md. 177, 127 A. 743; *Brault v. Brault,* 189 Md. 175, 180, 55 A. 2d 497, 499; *Geisey v. Geisey,* 190 Md. 618, 626-627, 59 A. 2d 319, 323.

The appellant claims that he did not run his wife out of the house on September 11, 1948, and lock the door so she could not return and that there is no corroboration of this fact. It was said by this Court in the very recent case of *Maranto v. Maranto,* decided February 9, 1949, 192 Md. 214, 64 A. 2d 144: "The principal object of the statutory requirement of corroboration, Code, Art. 35, sec. 4, is to prevent collusion, and when the possibility of collusion is precluded, the corroboration need be but slight. 'The corroboration required varies with the circumstances of particular cases, and as the danger of collusion * * * increases or diminishes, in the same ratio the rule prescribed by the statute is applied with greater or less strictness * * *, but under no circumstances may it be dispensed with altogether.' *Jacobs v. Jacobs,* 170 Md. 405, 409, 185 A. 109, 111. It is applied most strictly in uncontested cases. *Bowersox v. Bowersox,* 157 Md. 476, 146 A. 266, 65 A. L. R. 165; *Jones v. Jones,* 186 Md. 312, 313, 46 A. 2d 617. In genuinely contested cases the corroboration required may be slight and may be found in evidence of admissions by the other spouse. *Schriver v. Schriver,* 185 Md. 227, 241, 242, 44 A. 2d 479. Apart from statute, to sustain the burden of proof, testimony of one spouse, flatly contradicted by the other, needs corroboration, but the inherent strength or weakness of opposing testimony may furnish corroboration." In the case before us there is no question of collusion.

There is slight corroboration of the appellee's testimony as to what occurred on that date. Mrs. Alva D. Smith, the neighbor, testified, without objection, that she was on the street and heard some shouting and recognized the voices of the appellant and the appellee. Suddenly Mrs. Cullotta appeared on the front lawn, crying and running and someone came around the back of the house. She then asked the appellee if she would like to bring the children over to her house to get them dressed for a neighborhood party. She said the appellee replied: "I am sorry, I cannot get into the house, it is locked." As a result of this the appellee called her father and brother.

As to condonation by the wife of the husband's former offenses, we are of opinion that his subsequent actions have revived the wife's remedy for those offenses. Condonation is, of course, forgiveness with an implied condition that the marital offenses shall not be repeated and that the party offended shall be treated with conjugal kindness and on breach of this condition, the right to remedy for former injuries revives. *Fisher v. Fisher*, 93 Md. 298, 48 A. 833; *Hilbert v. Hilbert,* 168 Md. 364, 372, 177 A. 914, 98 A. L. R. 1347; *Schriver v. Schriver*, 185 Md. 227, 244, 44 A. 2d 479, *supra.*

We have evidence that in October, 1946, the husband was convicted of assault upon his wife. While earning about $60.00 per week, beginning in October, 1947, he bought presents for another woman and stored her furniture in his name. The wife was aware of this association. In August, 1948, on the street in the presence of the neighbors he slapped his wife twice in the face and on September 11, 1948, he finally drove her from the home and locked the door behind her. It may well be that the offenses of September 11, 1948, did not in themselves constitute cruelty or constructive desertion. However, the revival of the whole course of events since October, 1946, in the opinion of this Court, shows that the appellee could not continue the matrimonial cohabitation without danger to life, limb, health, and self-respect. The appellant does not deny that he never gave the ap-

pellee any money to run the household, but handled all the funds himself. He does not deny that he struck his wife on more than one occasion. He filed the bill for custody of the children within four days from the time he drove her from his home. *Brault v. Brault*, supra, *Geisey v. Geisey*, *supra*; *Smith v. Smith*, 192 Md. 111 63 A. 2d 628.

It has been stated many times by this Court that in the award of custody of minor children the chief concern of the Court is the welfare of the infant. *Carter v. Carter*, 156 Md. 500, 505, 144 A. 490; *Kartman v. Kartman*, 163 Md. 19, 21, 161 A. 269; *Dunnigan v. Dunnigan*, 182 Md. 47, 51 and 52, 31 A. 2d 634; *Young v. Weaver*, 185 Md. 328, 331, 44 A. 2d 748; *Burns v. Bines*, 189 Md. 157, 162-163, 55 A. 2d 487, 489; *Atkins v. Gose*, 189 Md. 542, 56 A. 2d 697. Before us are four infant children, all under the age of ten years. Disinterested witnesses testified that the mother gave these children sufficient care. Even the paternal grandmother would not say that the appellee was not a fit mother for these children. Infants as young as those before this Court should not be separated from their mother without grave and weighty reasons, which we do not find existed in this case. *Swoyer v. Swoyer*, 157 Md. 18, 145 A. 190; *Schneider v. Hasson*, 161 Md. 547, 550, 157 A. 739; *McCann v. McCann*, 167 Md. 167, 171 and 172, 173 A. 7; *Stimis v. Stimis*, 186 Md. 489, 47 A. 2d 497; *Pekar v. Pekar*, 188 Md. 360, 52 A. 2d 468; *Miller v. Miller*, 191 Md. 396, 408, 62 A. 2d 293, 300 and 301.

The chancellor had the opportunity to observe both the appellant and the appellee and to observe the witnesses and hear their testimony in regard to their treatment of the children. This case is another of those in which the atmosphere of the trial, the appearance and demeanor of the witnesses is invaluable in reaching a correct and just conclusion. If the record in this case left us in doubt, we should not disturb his findings. *Collins v. Collins supra; Smith v. Smith, supra; Eberwein v. Eberwein, supra*. The children have been in the

custody of their mother for a period of over four months. If the mother does not continue to give them proper care, further proceedings may be brought.

Appellant further contends that the award of alimony and support of the children in a lump sum of $30.00 per week should be separated, in that a certain amount be allowed the wife for alimony and separate allowance for the children to take care of future changes in the conditions and relationship of the parties and their children. In the case of *Roberts v. Roberts,* 160 Md. 513, 524, 154 A. 95, relied on by the appellant, the age of the children, financial circumstances, station in life, age and physical condition of the parties and their children presented an entirely different situation than that before us in this case. Under the conditions here, we will not disturb the award of alimony for the wife and support for the infant children in a lump sum. The award of counsel fee was not argued in the briefs or in this Court. The decree will be affirmed.

*Decree affirmed, with costs.*