TOWNSEND *v.* TOWNSEND

[No. 44, October Term, 1954.]

592

*Decided December 13, 1954.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*John E. Jacob, Jr.,* and *John W. Long* for the appellant.

*William W. Travers,* with whom were *Webb, Bounds & Travers* on the brief, for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an amended decree denying appellant the right of visitation with her minor son.

The parties to this suit were married on August 2, 1946, and resided until November, 1951, on the farm of appellant's father about six miles from Salisbury where the appellee was employed. About November 10, 1951, the appellant left her husband, the appellee, and went to Florida. Shortly thereafter her husband filed a bill for divorce *a vinculo matrimonii* alleging that his wife had committed adultery with a certain Lonnie Bledsoe

at Miami, Florida. The wife filed an answer denying the allegation of the bill. Testimony was taken before an examiner which showed that the appellant and Bledsoe lived together in a motel in Florida. As a result the then chancellor, Levin C. Bailey, signed a decree on January 10, 1952, granting the appellee a divorce *a vinculo matrimonii* and awarding the custody and guardianship of the infant child, Steven Michael Townsend, born February 3, 1949, to the father, subject to the further order of the court.

On October 30, 1953, the appellant filed a petition alleging in part the following matters: the divorce, and the award of custody as hereinbefore set forth. Since November 20, 1951, her infant son had been in the care and keeping of her parents, Mr. and Mrs. Herman E. Renshaw, near Salisbury, Maryland. On October 27, 1953, her former husband removed the infant child from the care and keeping of her parents and stated that such removal was permanent. He had denied her the right to see her son. She asked that the decree of January 10, 1952, be amended to award her custody and guardianship of the minor child subject to further order of the court. An answer was filed to that petition and testimony taken before the chancellor in open court on January 4, 1954. This testimony showed in part that the child had remained with the appellant's parents, where it received excellent care, until the latter part of October, 1953, the father visiting the child at various times and taking him away on other occasions. In fact, the father continued to work on his father-in-law's farm for sometime after his wife left him. The appellee testified that the Renshaws promised him that the appellant would "have nothing to do" with the infant while at their home. In April of 1952 the appellee started courting his present wife, Dorothy Townsend, became engaged to her in June of 1953, and married her on December 23, 1953. On a Saturday, shortly before October 27, 1953, appellee found out that his child was not at the Renshaw home. He had heard "by the grapevine" that the appellant

was taking the infant away from the Renshaw home at times. He located the infant in an automobile with appellant in Salisbury where she had taken the child to a motion picture show. He then slapped the appellant and took the child away from her. The appellee testified that his wife said a few indecent words to him and he "lost his head" and slapped her. He brought the child back to the Renshaw's the following Monday morning. Shortly thereafter the appellee had some difficulty with Mr. Renshaw on the farm and struck him. As a result of these two assaults, warrants were issued for the appellee. We are informed that no action was taken on these warrants. As a result of the issuance of the warrants, the appellee went to the Renshaw's home on October 27, 1953, and took his son to the home of his mother, where the infant lived until he was taken to the home of the appellee and his wife, Dorothy, and where the child is now living and receiving adequate care.

After the appellant returned from Miami, Florida, she lived with her parents for a short time. Shortly after the divorce decree of January 10, 1952, she left the home of her parents and went to Texas. She denied that she left Salisbury with Bledsoe. She also denied that she lived with him in Texas but admitted that he was in that locality. She did not come back to Wicomico County until October of 1952, when she returned again to the home of her parents. She lived there until the spring of 1953 when she moved to Salisbury where she was employed, because she had no automobile with which to commute. She has rented a room and lived in Salisbury since that time. There is no testimony as to any misconduct on the part of the appellant since her return to Wicomico County in October of 1952.

As a result of that hearing the chancellor on April 20, 1954, passed an amended decree denying the petition of the appellant and awarding the custody and guardianship of the minor child, as in the decree of January 10, 1952, to the appellee. That decree further ordered that the appellant had "no right of visitation with her said

minor son, Steven Michael Townsend, either at her own home or at the home of her said former husband except such privilege as may be granted by her said former husband, Joseph W. Townsend, within his absolute discretion; subject to the further Order of this Court." From that part of the decree of April 20, 1954, denying her the right of visitation with the infant, the appellant appeals. She does not contest that part of the decree granting custody and guardianship to the appellee.

In cases involving custody of infants, the welfare of the child is the consideration of major importance. This holds true even when such consideration denies the custody to the parents or either of them. While nature gives to parents the right of custody over their own child, the State may regulate the custody of the child whenever necessary. *Dietrich v. Anderson,* 185 Md. 103, 43 A. 2d 186; *Ross v. Pick,* 199 Md. 341, 86 A. 2d 463; Code (1951) Art. 72A, Section 1. The father and mother are joint, natural guardians of their minor children and neither of the parents has an inherent right of custody over the other. *Miller v. Miller,* 191 Md. 396, 62 A. 2d 293. The mother is usually preferred where the children are of tender years. *Cullotta v. Cullotta,* 193 Md. 374, 66 A. 2d 919. Although this is true, custody will not be awarded merely to gratify the natural maternal affection. *Atkins v. Gose,* 189 Md. 542, 56 A. 2d 697. Very often where the mother has been guilty of adultery, the custody is given to another. *Pangle v. Pangle,* 134 Md. 166, 106 A. 337; *Swoyer v. Swoyer,* 157 Md. 18, 145 A. 190; *Stimis v. Stimis,* 186 Md. 489, 47 A. 2d 497; *Pekar v. Pekar,* 188 Md. 360, 52 A. 2d 468; *Atkins v. Gose, supra.* In *Pekar v. Pekar, supra,* the mother was living with the paramour. It was said in that case by Chief Judge Marbury: "But certainly, upon the facts shown, this boy should not be permitted to live with his mother while she is living as she is now. There would be no possibility of his being inculcated with any principles of morals or decency under such circumstances." If necessary, custody may be given to more remote members of the family or.

if necessary, to those outside the family. The overriding concern of the court in every case involving the custody of children is the best interest and welfare of the children. *Trudeau v. Trudeau,* 204 Md. 214, 103 A. 2d 563. It was said in *Maddox v. Maddox,* 174 Md. 470, at page 476: "While the court usually does not deny to a parent the opportunity to visit the child, and occasionally to have temporary custody at suitable times, nevertheless even this comfort may be denied the parent, if the best interest of the child is subserved. *McCann v. McCann,* 167 Md. 167, 171, 172, 173 A. 7; *Kartman v. Kartman,* 163 Md. 19, 22, 161 A. 269; *Bernard v. Godfrey,* 157 Md. 264, 271, 145 A. 614; *Schneider v. Hasson,* 161 Md. 547, 551, 157 A. 739; *Carter v. Carter,* 156 Md. 500, 506, 507, 144 A. 490; *Pangle v. Pangle,* 134 Md. 166, 170, 106 A. 337."

Where the custody of a child is sought by a mother after a divorce caused by her adultery, the child should not be removed from the care of the father to whom it has been judicially awarded and given to that of the mother without strong evidence of the propriety and wisdom of such a course. *Pangle v. Pangle, supra.* However, a suitable provision for the parent to have reasonable access to the child upon such terms as may be prescribed by the chancellor, who shall retain jurisdiction over it, should not be denied unless the chancellor is convinced that such visitations are detrimental to the best interests of the infant. *Pangle v. Pangle, supra; England v. Megear,* 145 Md. 574, 125 A. 731; *Carter v. Carter,* 156 Md. 500, 144 A. 490; *Barnard v. Godfrey,* 157 Md. 264, 145 A. 614; *Singewald v. Singewald,* 165 Md. 136, 166 A. 441; *Dunnigan v. Dunnigan,* 182 Md. 47, 31 A. 2d 634; *Brault v. Brault,* 189 Md. 175, 55 A. 2d 497.

Here, the life lived by the mother between November, 1951, and October, 1952, was such that during that period she should have had no custody of her child. However, since October, 1952, according to the testimony in this case, her life has been entirely different. It is

admitted by all the parties that the care provided by the appellant's parents, Mr. and Mrs. Renshaw, was adequate. It is also admitted that custody in the appellee is proper. We are of opinion, however, that the appellant should have an opportunity of contact with the infant here at reasonable times at the home of appellant's parents, the child not to be removed from Wicomico County. The case will therefore be remanded in order that the chancellor may further amend the decree by allowing the mother to visit the infant at the Renshaw home for such periods and under such circumstances as may to him seem proper, subject to further order. If the mother or her parents abuse this privilege, the chancellor may at any time further amend the decree.

> *Decree affirmed in part, and reversed in part, and cause remanded for the passage of a decree in conformity with this opinion. Costs to be paid by appellee.*