RILEY *v.* RILEY

[No. 338, September Term, 1964.]

*Decided June 29, 1965.*

The cause was argued before Hammond, Horney, Marbury, Sybert and Barnes, JJ.

*Joel H. Pachino,* with whom was *George D. Edwards* on the brief, for the appellant.

*Solomon Liss* for the appellee.

HORNEY, J., delivered the opinion of the Court.

In this case where there was ample evidence of opportunity to commit adultery but a dearth of evidence of an adulterous disposition, the primary question on appeal is whether the chancellor erred in awarding custody of the minor children of the parties to the mother rather than to the father who was granted a divorce on the ground of desertion.

Ronald Riley and Constance Riley were married in March of 1958. Two children, a girl now aged five and a boy now aged three, were born to them, but the marriage for the most part had been a stormy one. In December of 1962, the wife left the home of his parents, where the parties had been living, and, with the consent of the husband, took the children with her. Later, in July of 1964, when the mother permitted the girl to visit the father for a week, he refused to surrender the child when the mother sought her return. As a consequence, other disputes arose with respect to the custodial and visitation rights of the parents.

Eventually, the wife filed a bill for an absolute divorce on the grounds of constructive desertion and adultery. And the husband filed a cross-bill for an absolute divorce on the ground of actual desertion and adultery. Both denied the allegations of the other and both sought custody of the children. As of that time, the husband still had custody of the girl and the wife had custody of the boy.

After the separation the mother went to work. She would leave the children with a baby sitter in the morning and pick them up on the way home from work. There was nothing to indicate any neglect or a lack of maternal interest in and affection for the children. Instead, the husband based his claim for custody of the children on the ground that the mother had committed adultery and was therefore morally unfit to rear them.

Although evidence relating to the alleged illicit relationships of the wife with two men was produced below, the husband, on appeal, relies on the evidence concerning only one. As to him, it is conceded that he was unmarried and that the wife

shared a "double house" with him for about a year. The house, which was owned by the man's mother, had only one entrance and a common stairway from the first to the second floor where there was a bathroom and four bedrooms. According to the wife, the doors between the two bedrooms occupied by her and the child on her side of the house and the bedroom occupied by the man on his side of the house were always kept locked, and the man used the bathroom on the second floor while she and the child used the bathroom on the first floor. There was no evidence to the contrary.

On one occasion the husband had seen the man painting a room in the apartment occupied by the wife. On another occasion he had seen his wife and the man riding in an automobile in the daytime near the home of her mother. On neither occasion did he see any display of affection by one toward the other. There was other evidence that the wife and the man had been seen by a person other than the husband coming out of a food store in a shopping center—he was carrying a bag of groceries and she was carrying the child. The wife admitted going to the drug store in the shopping center with the man but denied shopping for groceries with him. The wife also denied committing adultery with either of the two men referred to or having any perverse interest in either of them. And the husband admitted that he had never seen his wife doing anything wrong.

The wife's bill, alleging desertion and adultery, was dismissed for lack of sufficient proof of either ground. As to the husband's bill, also alleging desertion and adultery, the chancellor referred to the conduct of the wife as "indiscreet," "foolish," and "callous about public opinion," but he did not find her guilty of adultery. Although he recognized that it was a "very close situation," the chancellor stated that he was "not persuaded as to the clear and convincing proof of adultery," and granted the husband a divorce on the ground of desertion. In awarding custody of both children to the mother, the chancellor provided that the award would not become effective until she was out of "that" house and living in a satisfactory environment for the rearing of children. The mother moved within a week and the custody decree was signed forthwith. The appeal is from that decree.

The cross-appeal taken by the wife from the decree granting the husband a divorce was dismissed by her on February 1, 1965.

The chancellor, in effect, found that while there was an abundance of evidence of opportunity, there was no evidence of a disposition on the part of the wife to commit adultery. We are unable to say that his findings on the facts were clearly wrong. As the chancellor intimated, and the record shows, the wife and the man had been seen together only three times and each of those occasions was under explainable and innocuous circumstances. While whether or not a disposition to commit adultery has been shown to exist must necessarily depend on the facts of each case, the record here is devoid of any evidence which would support such an inference. Clearly there was here no showing of an adulterous disposition as there was in such cases as *Abare v. Abare,* 221 Md. 445, 157 A. 2d 427 (1960), *Hockman v. Hockman,* 187 Md. 340, 50 A. 2d 136 (1946), and *Steinla v. Steinla,* 178 Md. 367, 13 A. 2d 534 (1940). See also *Pekar v. Pekar,* 188 Md. 360, 52 A. 2d 468 (1947), where the parties had lived together in the man's home under circumstances strikingly similar to those in the case at bar, but where there was evidence that the man and woman were in love with each other and might possibly marry as soon as she was free.

Regardless of the ground which entitled the husband to a divorce, the real question in this case, as in all other custody cases, is whether the award of custody to the mother was in the best interests of the children. *Oliver v. Oliver,* 217 Md. 222, 140 A. 2d 908 (1958). We see nothing to indicate that the award of custody to the mother was not proper, and we so hold. See *Daubert v. Daubert,* 239 Md. 303, 211 A. 2d 323 (1965).

Since the appeal of the husband was from that part of the decree granting custody and not from the part granting the divorce, the answer to the question raised by the husband as to whether the chancellor had authority to direct him to pay for the printing of the wife's brief and a counsel fee for services rendered in the preparation thereof, depends on what printing had been done and what legal services had been rendered before February 1, 1965, when the wife dismissed the cross-appeal with

respect to the divorce. See *Upham v. Upham,* 238 Md. 261, 265, 208 A. 2d 611, 613 (1965), and cases cited therein. As to this point, since the record does not disclose either of these facts, the case will be remanded without affirmance or reversal for further proceedings. Maryland Rule 871 a.

> *Decree and order awarding custody of children to mother affirmed; order directing husband to pay wife's printing costs and counsel fee remanded without affirmance or reversal for further proceedings; appellant to pay the costs on appeal.*