KLINE *v.* BENNETT, ET AL.

[No. 41, September Term, 1966.]

*Decided January 27, 1967.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and FINAN, JJ.

*Harry J. Goodrick* and *Leonard H. Lockhart* for appellant.

*William B. Evans,* with whom was *Edward D. E. Rollins, Jr.,* on the brief, for appellees.

PER CURIAM.

In this custody suit arising in the Circuit Court for Cecil County, Judge Keating, as Chancellor, by a decree of January 11, 1966, awarded the custody of two male children to their stepmother, Phyllis Campbell Bennett (Phyllis) with the right of the mother of the children, Patricia Ann Bennett Kline (Patricia) to visit them at convenient times and with the right to the mother to make application to the lower court, from time to time, during the summer months to have the children visit the mother. The mother has appealed to this Court from the Chancellor's decree.

The petition for custody of the two children was originally filed against John N. Bennett, Jr. and Leona Bennett, his wife, the paternal grandparents of the two children. Phyllis was later joined as a party respondent. After answers were filed, two hearings were held—one, on September 27, 1965, and the other, on December 9, 1965.

The Chancellor, in a well-considered opinion filed in the suit, found the following facts which are supported by the evidence taken at the hearings.

Patricia and John N. Bennett 3rd (John) were married in 1955. Three children were born to them during their marriage—Darryl, aged ten at the time of the last hearing, Larry, aged eight and a half and Gary, whose custody has remained with his mother Patricia and whose custody is not contested. In March 1962, Patricia and John separated and in November 1963, John filed suit in the Circuit Court for Cecil County for a divorce a vinculo matrimonii on the grounds of a mutual agreement to separate. Later, by an amended bill of complaint, adultery of Patricia with Thomas Kline (Thomas—the present hus-

band of Patricia) was alleged as the ground for the divorce a vinculo matrimonii. The parties to the divorce suit had agreed that Darryl should be in John's custody and that Patricia should have custody of Larry and Gary.

The Circuit Court, on March 27, 1964, granted John the divorce a vinculo matrimonii on the original ground and awarded custody in accordance with the agreement of the parties. On July 13, 1964, upon John's petition, the Circuit Court passed an order awarding Larry's custody to John, Patricia in the meantime having married Thomas. After Larry's custody was awarded to John, Patricia and her new husband Thomas moved to Texas taking Gary, the youngest son with them. John married Phyllis on July 9, 1964.

After the separation of John and Patricia in March 1962 until the death of John as a result of an automobile accident on September 2, 1965, the two older boys lived with their father, first at the home of his parents, and after his marriage to Phyllis, at his own home with Phyllis, his second wife. The two boys continued to live with Phyllis after their father's death and she is much attached to the boys and they to her.

Patricia had committed adultery with Thomas and there was evidence that Thomas would not be a good influence upon the two children.

We now quote from the Chancellor's opinion:

> "The Court further finds that the home of Mrs. Phyllis Campbell Bennett, as well as the home of Mr. and Mrs. John N. Bennett, Jr., the boys' grandparents, is a good, well-kept, well-disciplined home and the boys are both loved and properly supervised by Mrs. Phyllis Campbell Bennett and by the grandparents. They are given good school opportunities as well as religious training and are afforded the best of material things within the means of the Defendants. On the other hand, the Court finds that Mrs. Kline and her present husband, also keep a reasonably orderly, although small, home in an apartment complex in Texas in the City of Houston where both Mrs. Kline and her husband are employed, the latter making a substantial

salary and commission income from his employment as a cigar salesman.

"The Court further finds that, although Mr. and Mrs. Kline would, no doubt, be able to afford these two (2) boys such material requirements in the way of food, clothing, medical expenses, schooling, etc., as they would require, it is doubtful that they would be able to exercise such influence upon the boys at this age as would contribute either to the boys' ultimate happiness, success, or best interests. The testimony indicates that, although both boys have a certain amount of attachment for their mother, this attachment is not strong and is impaired by their knowledge that the step-father, Kline, has intervened in their previous happy life with 'their mother and legitimate father. They neither like nor respect Mr. Kline and the testimony reveals that a certain amount of bickering and profanity is exchanged between their mother and step-father which was observed by them during their visit to Texas last year.

"The Court further finds that Mr. Kline, although making a substantial income, and although he is under a Court Order in another Equity suit in this very Court requiring him to make contributions to his previous wife towards the support of his own legitimate children, is in substantial arrears in the payments to the point where he has been cited for Contempt although not yet heard upon the subject of his delinquency. The Court, therefore, finds that the habits of said Kline are not such as to lead the Court to believe that he would exert an uplifting or beneficial influence upon these two (2) young boys. He would hardly be expected to present a satisfactory father image to step-children when he has neglected his own offspring."

There was also evidence that Phyllis had had premarital relations with John one month before their marriage and that Phyllis had a son born out of wedlock, who was later adopted by John after his marriage to Phyllis.

The Chancellor concluded that the best interests of the two children required that Phyllis be given the custody of the two boys subject to the visitation rights of Patricia already mentioned. We will not disturb his findings and conclusion.

As we recently stated in *Cornwell v. Cornwell*, 244 Md. 674, 224 A. 2d 870 (1966):

> "The primary consideration in cases of this nature is the best interest and welfare of the children. The cases denying an adulterous mother the custody of her children are numerous, but the facts and circumstances in each case are unique. As stated by Judge Hammond (now Chief Judge) in *Trudeau v. Trudeau*, 204 Md. 214, 218, 103 A.2d 563:
>
> > 'Thus, whatever paths of the maze are followed, the destination is always the child's welfare and prospects. Even as no will has a twin, no custody matter is the image of another and in none can the proper paths be plotted automatically on a map of the principles laid down by the cases. This is why the opinions of this Court reiterate, as particularly applicable, the rule that the opportunity of the Chancellor to see and hear the witnesses must be accorded the greatest respect. It was set forth in *Cullotta v. Cullotta, supra* (193 Md. 374, 384, 66 A.2d 919), in these words: "This case is another of those in which the atmosphere of the trial, the appearance and demeanor of the witnesses is invaluable in reaching a correct and just conclusion. If the record in this case left us in doubt, we should not disturb his findings." ' "

*Decree of January 11, 1966 affirmed, the appellant to pay the costs.*